UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KARLEN, CARLA R.                                          JURY TRIAL DEMANDED
    Plaintiff

v.

UBER TECHNOLOGIES, INC.,
JAVIER, JOHN DOE 1-3
    Defendants

## COMPLAINT

**I.  JURISDICTION**

1. The District Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. The Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. Section 1367.

2. The Court has personal jurisdiction over the Defendants because they transact business the state of Connecticut and have purposely availed themselves of the benefits doing business in the State of Connecticut.

**II.  PARTIES**

3. Plaintiff, Carla Karlen, is a resident of, and domiciled in, the State of Connecticut.

4. Defendant, Uber Technologies, Inc., (hereafter referred to as "Uber") is a corporation formed under the laws of the State of Delaware, with its principal place of business located at 1455 Market Street, 4th Floor, San Francisco, California 94107.

5. Defendant, Javier, last name unknown, upon information and belief is domiciled in and a resident of the State of Pennsylvania.

6. Defendants, John Does 1-3, are agents, services, or contractors, whose names and identities are unknown to Plaintiff at this time, who

**III.  STATEMENT OF FACTS**

7. Plaintiff is a resident of Westport, Connecticut.

8. Defendant operates a transportation company that provides private car service to its customers.

9. Defendant publishes a ride service application accessed by computer or cell phone that allows riders to arrange vehicle transportation in its operating areas.

10. As part of its business, Defendant engages drivers to provide vehicle transportation to its customers.

11. Defendant charges riders fees for vehicle transportation arranged through its app.

12. On or about June 19, 2019, at approximately 2:00 p.m. Plaintiff was a passenger in a motor vehicle being operated by Javier, last name unknown, who was an agent, servant and/or employee of the Defendant Uber

13. A third party arranged for Plaintiff's transport from Philadelphia, PA to Plaintiff's residence by Defendant Uber.

14. Defendant Uber, a transportation and ride-share company, through its dispatcher, dispatched Defendant Javier, to the Philadelphia location to pick up and transport Plaintiff to Fairfield Connecticut.

15. The vehicle operated by Javier was traveling in a northeasterly direction on the New Jersey Turnpike, having picked up Plaintiff in Philadelphia Pennsylvania, en route to Fairfield Connecticut.

16. From the time that Defendant's driver picked up Plaintiff, Defendant's driver stared at Plaintiff through the rear view mirror.

17. Throughout the trip, Defendant's driver spoke to Plaintiff in an intrusive and suggestive manner.

18. As the trip proceeded, Plaintiff felt intimidated by the driver's behavior.

19. The trip from Philadelphia to Plaintiff required Defendant's driver to drive on interstate highways and to travel through New Jersey.

20. At the said time and place described above, the agent, servant and/or employee of Defendant Uber, suddenly and without warning began to drive and behave in a bizarre manner.

21. The driver began erratically speeding and swerving while continuing to travel on the New Jersey Turnpike.

22. After approximately 40 minutes the Defendant driver, Javier, demanded that Plaintiff get out of the vehicle.

23. Defendant's driver became more aggressive and insistent in his questioning of Plaintiff, and Plaintiff feared for her safety.

24. Defendant provided no method of contacting it in the event of an emergency or other incident.

25. Plaintiff's attempts to distance herself from Defendant's driver only agitated him.

26. Shortly after entering the New Jersey Turnpike, while talking on his cell phone, he told Defendant that she made him uncomfortable and that he would pull over to the side of the road and discharge her from his car.

27. Plaintiff attempted to reason with Defendant's driver, and told him that dropping her off on the side of a major turnpike would endanger her.

28. Plaintiff requested that he drop her at the next exit and Defendant's driver consented.

29. When Defendant's driver arrived at the next exit, Plaintiff told the toll booth operator what had occurred and that she needed police assistance.

30. Upon hearing this, Defendant's driver sped back onto the New Jersey Turnpike with Plaintiff locked in the back seat of his car.

31. At the time that Defendant Javier demanded that Plaintiff leave his vehicle they had not reached her destination, and in fact were in the travel lanes of the New Jersey Turnpike.

32. Exiting the vehicle in the manner and at the place demanded by Defendant Javier would have endangered Plaintiff and/or could have resulted in death or serious bodily injury.

33. Between 5-10 miles past that exit, at a deserted point of road, Defendant's driver pulled over to the side of the interstate and demanded that Plaintiff exit the vehicle.

34. Plaintiff refused to exit the car under the circumstances as caused by Defendant driver, Javier.

35. Defendant's driver then exited the car, opened the trunk and removed something that Plaintiff could not identify. Defendant Javier informed Plaintiff that he had a gun prior to him going into the trunk of his vehicle.

36. For approximately 40 minutes, Defendant's driver threatened Plaintiff and ordered her to exit his car.

37. Plaintiff required the assistance of her husband, who telephoned a 911 call to the New Jersey State Police informing them that she was being held against her will by the Uber driver, Defendant Javier, and that he was threatening to cause her to exit the vehicle on the highway. Plaintiff had two cellphones that she utilized, one to telephone her husband, and one she used to contact the New Jersey State Police.

38. Two New Jersey State Police officers, in separate vehicles, responded to the scene of the New Jersey Turnpike near Exit 11. For approximately 35 to 40 minutes Plaintiff was on the telephone with the New Jersey State Police officer, who, on speakerphone instructed the Defendant driver, Javier, not to put her out on the highway. Defendant Javier was also asked by the State Police officer to provide the location of his vehicle but he refused to do so. Defendant Javier did pull over to the roadside between Exits 11 and 12 and waited for the arrival of the State Police. Only then was Plaintiff able to be extricated from the Defendant Uber vehicle.

**IV.    COUNT ONE:        FALSE IMPRISONMENT**

1-38. Paragraphs 1-38 are hereby incorporated by reference and made paragraphs 1-38 of this Count One.

39. The conduct of Defendants caused an unlawful restraint of Plaintiff's physical liberty, causing her confinement within the boundaries of Defendants' vehicle for the period of time and conditions described above.

40. The restraint of Plaintiff's physical liberty was against her will, in that she did not consent to the restraint or acquiesce in it willingly.

41. Defendant acted with the purpose of imposing a confinement or with knowledge that such confinement would, to a substantial certainty, result from it.

42. Plaintiff was conscious of the confinement when it occurred and she was harmed by the confinement.

43. Plaintiff has been damaged thereby.

V.     **COUNT TWO:     ASSAULT**

1-38. Paragraphs 1-38 are hereby incorporated by reference and made paragraphs 1-38 of this Count Two.

39. The conduct of Defendants, as alleged above, caused Plaintiff to be placed in imminent apprehension of a harmful or offensive contact with her person.

40. Plaintiff believed that the actions of Defendants would result in imminent contact unless prevented by self-defensive action or flight or the intervention of some outside force.

41. The conduct of Defendants caused physical impairment of the condition of Plaintiff's body, physical pain, or illness through emotional shock and distress.

42. The conduct of Defendants was an offensive contact that would offend a reasonable sense of personal dignity.

43. The action described above was done by the Defendants intentionally, wantonly, or without the exercise of due care.

44. Plaintiff was damaged thereby.

VI.    **COUNT THREE:     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

1-38.   Paragraphs 1-38 are hereby incorporated by reference and made paragraphs 1-38 of this Count Three.

39.   Defendants intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct as described above.

40.   Defendants' conduct as described was extreme and outrageous.

41.   Defendants' conduct was the cause of emotional distress experienced by the Plaintiff.

42.   The emotional distress sustained by the Plaintiff was severe.

43.   Defendants' conduct exceeded all bounds usually tolerated by decent society, was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

44.   Plaintiff has been damaged thereby.

**VII.   COUNT FOUR:   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

1-38.   Paragraphs 1-38 are hereby incorporated by reference and made paragraphs 1-38 of this Count Four.

39.   Defendants engaged in conduct that they should have realized involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily injury.

40.   The conduct of Defendants caused emotional distress to the Plaintiff

41.   The distress caused by Defendants was of such a nature as might result in illness or bodily harm.

42.   Plaintiff has been damaged thereby.

**VIII.   COUNT FIVE:        VICARIOUS LIABILITY**

1-38.   Paragraphs 1-38 are hereby incorporated by reference and made paragraphs 1-38 of this Count Five.

39.   At the time of the transport of Plaintiff on or about June 19, 2019, described above Xavier was an agent, servant, and/or employee of Defendant Uber and engaged in his official duties with the business of Uber.

40.   Defendant Uber is liable to Plaintiff to the same extent as Defendant Xavier, as he operated his vehicle connection with his agreement with Uber.

41.   As a direct and proximate result of the conduct of Defendants, Plaintiff sustained emotional, and physical injury and damages.

42. Plaintiff has been damaged thereby.

**VIII.   COUNT SIX:        NEGLIGENT HIRING AND RETENTION**

1-38.   Paragraphs 1-38 are hereby incorporated by reference and made paragraphs 1-38 of this Count Six.

39.   Defendant Uber hired Javier, who was, or became unfit or incompetent to perform the work for which he was hired.

40.   Defendant Uber knew or should have known that Defendant Javier was unfit or incompetent and that this unfitness or incompetence created a particular risk to others such as Plaintiff.

41.   Defendant Uber's negligence in hiring/supervising or retaining Defendant Javier was a substantial factor in causing Plaintiff's harm.

42.   Plaintiff has been damaged thereby.

**VIII.   COUNT SEVEN:        BREACH OF IMPLIED CONTRACT**

1-38.   Paragraphs 1-38 are hereby incorporated by reference and made paragraphs 1-38 of this Count Six.

39.   Defendant Uber portrays itself as a safe mode of transportation for women.

40. Defendant Uber, by portraying itself as a safe mode of transportation, created an implied contract and a duty to provide safe, secure, and non-threatening carriage by its drivers including Defendant Javier.

41. Defendant Uber breached its implied contract of safe, secure transportation of Plaintiff.

42. Defendant Uber failed to put in basic security measures that might have prevented the assault, false imprisonment, and emotionally distressing conduct toward Plaintiff.

43. Plaintiff has been damaged thereby.

WHEREFORE, Plaintiff prays for the following relief.

    a.     A trial by jury
    b.     Compensatory damages
    c.     Punitive damages (as to Defendant Uber)
    d.     Such further and equitable relief as the court may deem appropriate.

THE PLAINTIFF

BY: /s/ *Josephine Smalls Miller*

Josephine S. Miller, Fed Bar #ct27039

152 Deer Hill Avenue, Suite 302

Danbury, CT. 06810

Tel: (203)512-2795