**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| | ) | |
| CARLA R. KARLEN, | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:21-cv-00835-VAB |
| | ) | |
| UBER TECHNOLOGIES, INC. and | ) | |
| JAVIER, JOHN DOE 1-3, | ) | |
|     Defendants | ) | SEPTEMBER 28, 2021 |
| | ) | |

**UBER TECHNOLOGIES, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

Uber Technologies, Inc. ("Uber") moves to dismiss plaintiff's complaint in accordance

with Fed.R.Civ.P. 12(b)(6). As grounds, Uber states that it is not subject to vicarious liability as a

matter of law as the acts committed by Defendant Javier[1] as alleged by plaintiff cannot be found

to be within the course and scope of any relationship Defendant Javier may have had with Uber.

Further, plaintiff fails to allege any causal connection between Uber's alleged negligence and her

damages.  In support of the same, Uber states as follows:

**Allegations in Plaintiff's Complaint**

Plaintiff Carla R. Karlen alleges the following in her Complaint:[2]

**I.       Factual Allegations against Defendant Javier**

Plaintiff alleges On June 19, 2019, a third party requested a ride for Plaintiff from

Pennsylvania to her home in Connecticut using the Uber App and was connected with driver

Defendant Javier. *See* Plaintiff's Complaint, *Document 1* at ¶¶ 12-15. Plaintiff alleges that from

---

[1] Plaintiff does not allege a surname in her Complaint.  Based on information provided in the complaint, Uber has been able to identify the driver of the subject trip.

[2] Uber disputes the allegations of the plaintiff's complaint, but, in accordance with the Rule 12(b)(6) standard, assumes the allegations to be true for the purposes of this motion only.

259466282v.1

the time Defendant Javier picked her up, he stared at her in the rear view mirror, spoke to her in an intrusive and suggestive manner, and began to drive and behave in a bizarre manner. *Id.* at ¶¶16-20. Plaintiff further alleges that Javier began driving erratically - speeding and swerving while continuing to drive on the New Jersey Turnpike. *Id.* at ¶¶21-22. After approximately 40 minutes, Plaintiff alleges that Defendant Javier demanded that Plaintiff get out of the vehicle. *Id.* at ¶¶21-22. Plaintiff alleges that Javier became more aggressive and insistent in his questioning of Plaintiff, and Plaintiff feared for her safety. *Id.* at ¶¶23. Plaintiff alleges that she requested that [Defendant Javier] drop her at the next exit and that Defendant Javier consented. *Id.* at ¶28. Plaintiff alleges that when they arrived at the next exit [and still in the vehicle], Plaintiff told the toll booth operator what had occurred and that she needed police assistance. *Id.* at ¶29. Plaintiff alleges that upon hearing this, Defendant Javier sped back onto the New Jersey Turnpike with Plaintiff locked in the back seat of his car. *Id.* at ¶30. Plaintiff alleges that at the time that Defendant Javier demand that Plaintiff leave his vehicle they had not reached her destination, and in fact were in the travel lanes of the New Jersey Turnpike. *Id.* at ¶31. Plaintiff alleges that exiting the vehicle in the manner and at the place demanded by Defendant Javier would have endangered Plaintiff and/or could have resulted in death or serious bodily injury. *Id.* at ¶32. Plaintiff alleges that between 5-10 miles past the exit, at a deserted point of the road, Defendant Javier pulled over to the side of the interstate and demanded that Plaintiff exit the vehicle. *Id.* at ¶33. Plaintiff alleges that she refused to exit the car under the circumstances as caused by Defendant Javier. *Id.* at ¶34. Plaintiff alleges that Defendant Javier exited the car, opened the trunk and removed something that Plaintiff could not identify. Defendant Javier allegedly informed Plaintiff he had a gun prior to going to the trunk of his vehicle. *Id.* at ¶35. Plaintiff alleges that for approximately 40 minutes (while pulled over on the New Jersey Turnpike), Defendant Javier threatened Plaintiff and ordered

259466282v.1

her to exit his car. *Id*. at ¶36. Plaintiff had two cell phones that she used to call 911 and her husband to report this to the New Jersey State Police. *Id*. at ¶¶37-38

## II.    Factual Allegations Against Uber

Plaintiff alleges in her complaint that Uber operates a transportation company which provides private car service to its customers. *Doc. 1* at ¶8. Plaintiff alleges that Uber publishes a ride service application accessed by computer or cell phone that allows riders to arrange vehicle transportation in its operating areas. *Id.* at ¶9. According to Plaintiff, as part of its business, Defendant engages drivers to provide vehicle transportation to its customers. *Id.* at ¶10. Plaintiff alleges that Defendant charges riders fees for vehicle transportation arranged through its app. *Id*. at ¶11.  Plaintiff also alleges that Uber, a transportation and ride-share company, through its dispatcher, dispatched Defendant Javier, to the Philadelphia location to pick up and transport Plaintiff to Fairfield, Connecticut.  *Id*. at ¶13.  Plaintiff asserts that Defendant provided no method of contacting it in the event of an emergency or other incident.  *Id*. at ¶24.  Plaintiff alleges that Uber failed to put in measures that might have prevented the assault, false imprisonment, and emotionally distressing conduct toward plaintiff.  *Id*. at ¶42.

Despite her allegations that Uber's processes were inadequate, nowhere in the complaint does plaintiff allege that: (1) a more extensive background check would have revealed that Defendant Javier was a danger to riders or (2) anything occurred during the time that Defendant Javier drove utilized the Uber that would have, or should have, alerted Uber to the fact that he would assault, falsely imprison, or display emotionally distressing conduct toward a rider.  Instead, plaintiff alleges that Uber provided no method to contact Uber in the event of an emergency or other incident and that it failed to install basic safety measures that might have prevented the subject incident. *Doc. 1* at ¶¶24, 42. As discussed in greater detail below, even if this is true, it

3

259466282v.1

has no bearing on whether Uber knew or should have known that Javier would pose a danger, and plaintiff does not allege that Javier's individual background check was flawed.  To be sure, in this case, a human being injured the plaintiff.  Neither Uber nor its technology caused Plaintiff any physical harm.

Similarly, plaintiff contends that Uber should have implemented certain safety features for riders during rides, such as safety measures and the ability to notify Uber in the event of an emergency or other incident. *Id.* at ¶¶24, 42. Again, however, she does not allege a causal connection between the absence of these features and her damages.  Additionally, and as discussed further below, Plaintiff has raised an improper John Doe without first seeking application for use of John Doe and/or pseudonym.

### III.    General Facts

Defendant Uber Technologies, Inc. ("Uber") is a technology company that uses its proprietary technology to develop and maintain digital multi-sided platforms. Uber's multi-sided platforms provide users (both the sellers and buyers) with various services, including matching and payment processing. Uber's most well-known and widely-used multi-sided platform is the Rides platform[3]. Riders download the rider version of the Uber App ("Rider App") and drivers download the driver version of the Uber App ("Driver App"); together, the Apps allow users to access the platform that facilitates the connection of individuals in need of a ride with individuals willing to provide transportation services.  The Ride at issue was conducted within the scope of the terms and conditions of the app download and usage.

---

[3]  Other well-known multi-sided platforms developed by Uber include UberEATS, UberTRANSIT, and UberFREIGHT.

For the trip at issue, a third-party account holder, Theresa JC Pazionis, not the Plaintiff, requested a trip for Plaintiff. Independent driver, "Javier"[4] who had access to the driver version of the Uber App accepted the trip request from Pazionis. Defendant Javier, by way of the rider version of the Uber App, was an independent driver, which was known to the account holder, Pazionis, at the time of the requested Ride. Regardless of the relationship between Uber and Pazionis, the alleged independent, intentional, and criminal actions alleged by Plaintiff as to Defendant Javier were outside of any relationship among the parties and was a superseding/intervening, unforeseen event breaking any causal actions or relationships between Uber and any other party to this litigation. Furthermore, no actions by Uber during the incident could have prevented the incident. Additionally, there is no factual claim that Defendant Javier has a criminal record or had a known and discoverable propensity towards criminal acts towards a woman of which Uber knew or should have known.

## IV.    Causes of Action Asserted by Plaintiff

In Count One, for false imprisonment, plaintiff alleges that Uber's conduct caused an unlawful restraint. *Doc. 1* at ¶¶39-43. In Count Two, plaintiff alleges assault. *Id.* at ¶¶39-44. In Count Three, plaintiff alleges intentional infliction of emotional distress. *Id.* at ¶¶39-43. In Count Four, plaintiff alleges negligent infliction of emotional distress. *Id.* at ¶¶39-42. In Count Five, plaintiff alleges that Uber is vicariously liable for Javier's actions as an agent, servant, and/or employee of Uber and engaged in his official duties with the business of Uber. *Id.* at ¶¶39-42. In Count Six, plaintiff alleges negligent hiring and retention. *Id.* at ¶¶39-42. In Count Seven, plaintiff alleges breach of implied contract.

---

[4] Plaintiff does not allege a surname in her Complaint. Based upon information provided in the complaint, Uber has been able to identify the driver of the subject trip.

5

Even if the plaintiff's factual allegations are true, as they must be at this stage of litigation, her complaint fails to state a claim for relief and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

**Argument**

## I.      Rule 12(b)(6) Standard

In order to withstand a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), citing *Twombly*, 550 U.S. at 570. "Naked assertions devoid of further factual enhancement" do not constitute adequate pleading. *Iqbal,* 556 U.S. at 678, quoting *Twombly,* 550 U.S. at 557 (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a claim if a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(internal quotations and citations omitted). "When determining whether the dismissal of a claim is warranted, the court accepts all allegations contained in plaintiff's complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982), cert. denied sub nom., 459 U.S. 1105, 103 S.Ct. 729 (1983).

However, conclusory allegations and unwarranted deductions of fact will not prevail against a motion to dismiss. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Conclusions contained in the complaint that are insufficiently supported by facts as pled are not

6

259466282v.1

entitled to a presumption of truth, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a cause of action. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-679 (2009). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Thus, to "raise a right to relief, the complaint must contain either direct allegations or permit properly drawn interferences to support every material point necessary to sustain a recovery." *Bell Atlantic Corp. v. Twombly,* 550 US 544, 556 (2007). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Id.*

## II.  Uber Is Not Vicariously Liable for Javier's Actions and as such Counts One through Five must be dismissed as to Uber

In Connecticut, an employer is liable for the willful torts of his employee when they are committed within the scope of his employment and in furtherance of the employer's business. *Pelletier v. Bilbiles*, 154 Conn. 544, 547, 227 A.2d 251; *Rappaport v. Rosen Film Delivery System, Inc.*, 127 Conn. 524, 526, 18 A.2d 362; *Antinozzi v. A. Vincent Pepe Co.*, 117 Conn. 11, 13, 166 A. 392.  Ordinarily, it is a question of fact whether the willful tort of an employee has occurred within the scope of his employment and in furtherance of his employer's business.  *Rappaport v. Rosen Film Delivery System, Inc.*, *supra*.

> "It has long been recognized that a master is liable for the willful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business.  The doctrine of respondeat superior focuses on the employee's conduct rather than on the employer's knowledge or approval of the acts.  If the employee acted with apparent authority in furtherance of employer business, the employer's consent or ratification of misconduct is irrelevant even an innocent employer must compensate an injured party.  The doctrine of respondeat superior, which makes the employer liable for actions by an employee, is based on public policy considerations that the employer shall be held responsible for the acts of those whom he employs, done in and

7

about his business, even though such acts are directly in conflict with the orders which he has given him on the subject."

*Id*. at *Belanger*. "Ordinarily, it is a question of fact as to whether a willful tort of the servant has occurred within the scope of the servant's employment and was done to further his master's business … But there are occasional cases where a servant's digression from duty is so clear-cut that the disposition of the case becomes a matter of law." *Quichimbo v. Luow*, 2018 Conn. Super. LEXIS 4968 (*quoting A-G Foods, Inc. v. Pepperidge Farm, Inc.* 216 Conn. 200, 207, 579 A.2d 69 (1990)). "We have long adhered to the principle that in order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business … But it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply." *Quichimbo v. Luow*, 2018 Conn. Super. LEXIS 4968 (*quoting Id.* at 208).

The factual conclusion that an employee's tortious conduct occurred during business hours, however, is insufficient to support the conclusion that the purported employee was acting within the scope of employment. *Quichimbo v. Luow*, 2018 Conn. Super. LEXIS 4968. "The vital inquiry in this type of case is whether the servant … was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business." *Id.* It is clear that **unless the individual acted** "**at least in part by a purpose to serve a principal, the principal is not liable.**" *Id.* (emphasis added).

Here, While Uber expressly denies that Javier was its employee at any time relevant to this litigation, even assuming he was, Plaintiff's claims fail because, as the below cases demonstrate, Uber cannot be held liable for Javier's actions as a matter of law. False imprisonment, assault, negligent and intentional infliction of emotional distress is far outside the scope of providing transportation services.

259466282v.1

Courts throughout the United States, including (but not limited to) California, Florida, Massachusetts, Oklahoma, Pennsylvania, New Jersey, and New York continue to conclude that, as a matter of law, intentional torts are outside the scope of any alleged agency or employment relationship such as that alleged here. *See, e.g.*, *Dier v. Armbruster, et al.*, MSC20-01742 (Cal. Super. May 21, 2021) (Contra Costa County Superior Court granted Airbnb's demurrer dismissing Plaintiff's negligence claim in case where plaintiffs alleged that an individual who rented next door property through Airbnb platform assaulted them during course of the rental); *Cho v. McEwan, et al.*, BC697693 (Cal. Super. Mar. 18, 2021) (California court granted Lyft's MSJ holding that plaintiff's vicarious liability argument failed as a matter of law because, regardless of how one characterized the relationship between Lyft and subject defendant driver, at the time of the incident, McEwan was not acting within the scope of that relationship when he allegedly assaulted an individual in an act of road rage); *Gonzalez v. Sierras, et al.*, 20STCV22103 (Cal. Super. Apr. 29, 2021) (Lyft's outside the scope demurrer granted where driver allegedly assaulted rider when rider would not exit the driver's vehicle); *Doe v. Uber Techs., Inc.*, No. 19-cv-03310-JSC, 2019 U.S. Dist.LEXIS 203466 (N.D. Cal. Nov. 22, 2019) (California court granted Uber's MTD finding that "Plaintiff has not plausibly alleged facts that support a finding that the assailant was acting within the scope of his ostensible employment when he assaulted Plaintiff."); *Echevarria v. Uber Techs., Inc., et al.*, No. 2021-002103-CA-01 Miami-Dade Co., FL April 21, 2021) (Uber and Portier's MTD granted as to Plaintiff's vicarious liability and negligent hiring and retention claims in case where delivery driver was allegedly involved in a verbal and physical assault with Uber Eats user's husband); *Jorge Rodriguez v. Uber Techs, Inc., et al.* (9th J.D. Osceola Cty. Feb. 10, 2021) (Florida court granted Uber's MTD finding Plaintiff failed to state a claim for vicarious liability based on alleged physical assault of rider); *Murray v. Uber Techs.,*

9

*Inc., et al.*, No. 20-11250-NMG (Mass. D.C. Sept. 11, 2020) (Massachusetts federal court granted Uber's 12(b)(6) motion finding that "as a matter of law, sexual assault necessarily falls outside the scope of employment" as "rape and sexual assault. . . do not serve the interests of the employer" and are "not motivated by a purpose to serve the employer."); *Hoffman v. Silverio-Delrosar, et al.*, No. 20-cv-13291 (D.N.J. June 15, 2021) (New Jersey federal court granted Uber's MTD dismissing Plaintiff's *respondeat superior* claim as a matter of law finding that driver's punching of rider was not a foreseeable act, did not further the driver's role.); *Pratt v. Lyft, et al.*, Supreme Court of Kings County, New York, Index No. 501701/2018 (July 1, 2021) (New York court granted Lyft's MTD as to, *inter alia*, Plaintiff's *respondeat superior*, fraud, and intentional infliction of emotional distress claims after potential rider assaulted by third-party during course of commencing trip arranged through Lyft platform); *Cortese v. Aman, et al.*, Supreme Court of Suffolk County, New York, Index No. 605477/2019 (Feb. 19, 2021) (New York court granted Uber's MSJ with prejudice in alleged sexual assault case dismissing Plaintiff's assault, battery, false imprisonment, and negligent hiring claims); *Minzer v. Barga, et al.*, Supreme Court, New York County, New York, Index No. 151979/2019 (May 22, 2020) (New York court granted Uber's Motion to Dismiss based on the independent driver's physical assault of a rider being outside the scope of any agency relationship); *Phillips v. Uber Techs, Inc.*, 2017 U.S. Dist. LEXIS 94979 (S.D.N.Y. 2017)  (June 14, 2017) (New York federal court granted Uber's 12(b)(6) MTD based on finding that driver's physical assault, battery, and false imprisonment could not be 'reasonably anticipated' by Uber and was accordingly, outside the scope of any relationship); *Mazaheri v. Doe*, *et al*., No. CIV-14-225-M, 2014 U.S. Dist. LEXIS 70342 (W.D. Okla. May 22, 2014) (Oklahoma federal court granted Uber's MTD where driver allegedly physically assaulted rider after verbal dispute with court holding, "it cannot plausibly be said…such behavior is a natural impulse

10

growing out of or incident to the attempt to complete the master's business. [Driver] was not acting to protect or further the interests of his employer, but instead pursued this course of conduct for his own personal interest of assaulting plaintiff."); *Owens v. Uber Techs., Inc.*, et al., No. 20-13942 (Ct. of Common Pleas, Berks Co., PA Mar. 11, 2021) (Pennsylvania court sustained Uber's Preliminary Objections dismissing  Plaintiff's battery, assault, and intentional infliction of emotional distress claims with prejudice in incident where driver alleged to have thrown tire iron at rider outside of driver's vehicle); *Coughlin v. Uber Techs., Inc., et al.*, No. 200203083 (Ct. of Common Pleas, Philadelphia Co., PA June 12, 2020) (Pennsylvania court sustained Uber's Preliminary Objections dismissing Plaintiff's *respondeat superior* and assault and battery claims with prejudice in case where driver allegedly sexually assaulted rider); and *Fusco v. Uber Techs., Inc.*, No. 17-36, 2018 WL  3618232 (E.D. Pa. July 27, 2018) (Pennsylvania federal court granted Uber's Motion to Dismiss dismissing Plaintiff's *respondeat superior* and negligent hiring claims after driver allegedly violently attacked a passenger upon learning that the passenger wanted to travel from  Philadelphia to New Jersey. Court found that conduct actuated by a purpose to serve the employer may nevertheless fail to create vicarious liability if the act is "so excessive and dangerous, as to be totally without responsibility or reason under the circumstances . . . [and here,] the brutality of the beating takes the act outside the scope of employment as a matter of law.").

Additionally, the Southern District of New York has already decided this issue as it relates to Uber in a case with similar facts, and the Court should consider the recent decision in *Phillips v. Uber Technologies, Inc.,* 16-CV-295 (DAB), 2017 WL 2782036 (S.D.N.Y. June 14, 2017). There, the Court dismissed an action (with prejudice) at the Motion to Dismiss stage against Uber and held that the intentional act of assault and false imprisonment is outside the scope of any alleged employment relationship. *Id*. In *Phillips*, plaintiffs claimed that the driver "sped away

11

dangerously" with the plaintiffs in the backseat, drove erratically, made high-speed u-turns, and chased the plaintiffs on foot when they finally exited the vehicle where he then assaulted them in the face with an umbrella.  Plaintiffs brought a cause of action against Uber for the tortious acts of the driver.  The Southern District, applying New York State law, dismissed the action against Uber and held that intentional torts are outside the scope of any alleged employment. The Honorable Judge Batts ruled that:

> …it need not make a determination on whether [driver] Mr. Chatouk should be classified an employee or independent contractor, because even assuming that Mr. Chatouk was an employee of Uber, his actions were so far outside the scope of employment that no reasonable employer, or Court for that matter, could have anticipated them.  Thus, Plaintiffs' Complaint would be dismissed regardless of whether Mr. Chatouk were classified as an employee or independent contractor. *Id.*

The court went on to say that the acts of battery, assault, and *false imprisonment* were acts not commonly performed by "taxi drivers", acts that "depart heavily from methods of normal performance" and acts that could not "reasonably have been anticipated by Uber."  *Id.*  A similar conclusion must be reached in the instant matter.

Here, Count One and Two of plaintiff's complaint alleges assault and false imprisonment against Defendant Javier and Uber.  Counts Three and Four of the plaintiff's complaint allege intentional infliction of emotional distress and negligent infliction of emotional distress against Javier and Uber. Count Five as to Uber is premised on a vicarious liability theory. Specifically, Plaintiff alleges that Uber is Javier's employer, and is thus responsible for his act in falsely imprisoning and assaulting her. While Uber expressly denies that Javier was its employee at any time relevant to this litigation, even assuming he was, these counts fail because, as the above cases demonstrate, Uber cannot be held liable for Javier's actions as a matter of law.[5] Similar to the

---

[5] This Court does not need to determine the relationship between Uber and Javier as, even assuming an employee relationship, Plaintiff's claims fail.  Uber maintains that Defendant Javier was not an employee of Uber at any time.

259466282v.1

plaintiffs in *Phillips* and many of the other cases outlined above, plaintiff in this case alleges that Javier falsely imprisoned and assaulted her, and she claims that Uber is vicariously liable for his acts. However, Javier's actions in assaulting the plaintiff have no relationship to Uber's function as a technology company that developed a software application. Moreover, and importantly, plaintiff does not allege this. Uber cannot as a matter of law be vicariously liable for Javier's actions.   As such, Counts One through Five must be dismissed as to Uber.

**III.     Plaintiff Fails to State a Claim for Negligent Hiring and Retention**

"A claim for negligent hiring, retention, supervision and training is based on the employer's direct negligence." *Saldana v. Port Chester*, 2010 U.S. Dist. LEXIS 142099, citing to *Sheila C. v. Povich*, 11 A.D.3d 120, 781 N.Y.S.2d 342, 350 (App. Div. 2004).   Claims for negligent hiring and retention arise from an employer "having placed the employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in making its decision concerning the hiring and retention of the employee." *Id*. (citations omitted). "Thus, an essential element of a cause of action in negligent hiring, retention, supervision, and training "is that the employer knew or should have known of the employer's propensity for the conduct which caused the injury." *Id*. at *Saldana*, citing to *Doe v. Rohan*, 17 A.D.3d 509, 793 N.Y.S.2d 170, 173 (App. Div. 2005).  The court in *Sheila*, dismissed Plaintiff's negligent hiring and retention claim where the complaint was "devoid of any allegations concerning this essential element" of employer's knowledge of its employee's propensity.

In the present case, plaintiff fails to state a claim for negligent hiring or retention.  Plaintiff fails to allege that Uber knew, or should have known, that Javier had a tendency to commit false imprisonment and assault.  She does not allege, for example, that there were prior complaints against Javier by other riders, or that Javier had a criminal history involving assault, or that he had

any criminal history that would have put Uber on notice that an assault could occur or was foreseeable. Indeed, there is no allegation that Javier had ever harmed someone previously at any time prior to assaulting the plaintiff, much less that Uber knew of any such prior acts. Drivers who utilize the Uber App are background checked by nationally accredited and licensed background check provider, Checkr, Inc. (which comply with the Connecticut requirements for TNC companies, PA 17-140—sHB 7126, TNC Driver Requirements (§§ 3 & 4))[6]. Plaintiff does not allege that Uber's background check of Javier would have uncovered a relevant criminal history had it been done differently or included any other supplemental items. To put it another way, even if Uber's background checks were inadequate, as plaintiff contends, there is no evidence of causation because there is no allegation that a different or more extensive screening method would have uncovered any facts to put Uber on notice that Javier posed a danger.

This issue as to the pleadings has already been addressed as to Uber.  In *Fusco v. Uber Techs., Inc*., No. 17-00036, 2018 U.S. Dist. LEXIS 126428, at \*11-12 (E.D. Pa. July 27, 2018), wherein plaintiff alleged that a driver physically assaulted him during a trip, applying Pennsylvania law, the Court dismissed plaintiff's claims against Uber for negligent hiring, supervision, and retention holding that "[a]lthough Plaintiff alleges that a reasonable employer in Defendant's position would have conducted additional screening before hiring the driver, this allegation does not state a claim for negligent hiring *unless it is further alleged that a more thorough screening process would have uncovered signs of violent behavior*." *Id*., at \*13 (emphasis added).  In the instant case, similarly, there is no allegation that a more thorough screening process would have uncovered signs of a propensity for the type of behavior alleged.  Plaintiff has not alleged that defendant Uber knew of any prior bad acts committed by Javier or any prior propensity of Javier

---

[6] C.G.S. §13b-119, Transportation network company driver requirements.

259466282v.1

to commit bad acts. As discussed below, plaintiff fails to make such an allegation because there was no prior indication before the subject incident, and her complaint should be dismissed with prejudice.

Plaintiff fails to allege any causal connection between the alleged inadequate driver screening and monitoring and the assault that she suffered. There is no allegation that Uber had any knowledge or reason to believe that *Javier,* not unnamed and unrelated third persons, had propensities for the type of behavior alleged by plaintiff in the Complaint, nor has Plaintiff alleged past misbehavior by Javier that would put a reasonable employer on notice of a propensity for misconduct. They do not allege that a more thorough screening or that additional safety measures would have revealed any behavior sufficient to put Uber on notice of Javier's propensity to assault Plaintiff. Drivers who utilize the Uber App are background checked in compliance with Connecticut law, PA 17-140—SHB 7126, §§ 3-4, by nationally accredited and licensed background check provider, Checkr, Inc. In fact, in this case, Checkr, Inc. conducted a background on Javier, which came back clear on January 3, 2019.[7] Plaintiff has not alleged any past misbehavior by Javier that did not appear on the Checkr background report or that would have put Defendants on notice of Javier's propensity for misconduct.

Lastly, Plaintiff simply alleges, in a conclusory fashion, that "Uber failed to put in basic security measures that might have prevented the assault, false imprisonment, and emotionally distressing conduct toward Plaintiff." *Id.* at Count Seven ¶42. This is nothing more than a bare recitation of the elements of a negligence claim, and, as such, Plaintiff fails to state a prima facie case of negligence. There is no allegation from Plaint of what safety measures, if implemented,

---

[7] A copy of this background check is available to the Court for *in camera* inspection given the inherently sensitive nature and privacy implications of an individual's background check.

259466282v.1

would have prevented the alleged incident.  Further, Javier's intentional criminal acts are a superseding intervening cause that breaks the causal chain.  Under Connecticut precedent, a finding that conduct constitutes a superseding cause renders the original negligence so insignificant to that superseding cause that the original negligence cannot be deemed to be a proximate cause of the injuries.  *Snell v. Norwalk Yellow Cab, Inc.*, 332 Conn. 720 (2019).  "Indeed, the supreme court has consistently have described a superseding cause as an intervening force that prevents an act of negligence of the defendant from being a substantial factor in producing a plaintiff's injury." *Id.*

To the extent plaintiff is asserting a negligent training claim separate and apart from the negligent supervision claim, this allegation likewise fails to allege causation. Plaintiff alleges that Uber hired Javier who was or became unfit or incompetent to perform the work in which he was hired. *Doc. 1* at Count Six ¶39.  That Uber knew or should have known that Javier was unfit or incompetent and this unfitness or incompetence created a particular risk to other such as Plaintiff. *Doc. 1* at Count Six ¶40. Uber's negligence in hiring/supervising or retaining Javier was a substantial factor in causing Plaintiff's harm. *Doc. 1* at Count Six ¶41.  Plaintiff does not allege a causal connection between the lack of training and the assault.  Plaintiff fails to identify what type of training Uber should have given to Javier to prevent him from assaulting plaintiff.  And even if such training could be identified, the failure to provide it is not the proximate cause of Plaintiff's injuries unless: (1) Javier was somehow unaware that it was unlawful to assault people and imprison them in his vehicle; and (2) he would have decided not to assault plaintiff because he was previously instructed in class that such behavior was impermissible.  Neither of those postulates are even remotely sustainable. Indeed, if such a causal link could be constructed, there would be no cut-off in terms of the training that alleged employers should give employees

16

regarding obvious criminal and tortious activity.  Would employers then need to train employees not to engage in terrorist activities? Or mass shootings? It is not reasonable to force alleged employers to offer training sessions on any and all random criminal acts that employees may commit on their own against the general public and in a fashion that is completely unrelated to the work they perform.  Indeed, there is no case law that says an alleged employee must be trained on commonly understood concepts of criminal activity--for instance, an alleged employee should not have to train an employee to not engage in activity that most would reasonably presume would violate the law such as shooting someone, or as here, assaulting them.  Thus, plaintiff fails to state a claim for negligent training.

In the absence of any allegation of causation, plaintiff's negligent hiring, training, retention, supervision claim fails as a matter of law. Thus, Count Six must be dismissed to the extent it alleges negligent hiring procedures.

## IV.    Plaintiff fails to state a claim for breach of implied contract

"The elements of breach of an implied contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Pelletier v. Galske*, 105 Conn. App. 77, 81, 936 A.2d 689 (2007).  Here, Plaintiff has not sufficiently pled that an agreement exists, and therefore there can be no breach of an agreement.  As an initial matter, the subject trip was arranged by a third-party, Pazionis, not by Plaintiff. Next, Plaintiff makes sweeping and unsupported generalizations.  Additionally, Plaintiff alleges that Uber failed to put in basic safety measures that might have prevented the assault, false imprisonment, and emotionally distressing conduct toward Plaintiff. *Doc. 1* at Count Six ¶42. There is no indication what safety measures, if instituted would have prevented Javier's intentional and unforeseeable

259466282v.1

criminal behavior.  Plaintiff merely alleges that Uber breached its implied contract of safe, secure

transportation of Plaintiff. *Doc. 1* at Count Six ¶41.

In total, Plaintiff fails to plead specific facts applicable over and above conclusory and

unsupported assertions relating to Uber's portrayal to women and its failure to put in basic security

measures that would have prevented Javier's intentional and unforeseen criminal conduct.  This

is wholly insufficient to sustain a cause of action against Uber.  For these reasons, Count Seven

must be dismissed in its entirety.

## V.    **Plaintiff improperly seeks punitive damages as to Uber**

Under Connecticut law, there is no vicarious liability for punitive damages.  *Matthiessen*

*v. Vanech*, 266 Conn. 822, 837, 836 A.2d 394 (2003).  Plaintiff improperly pleads in her wherefore

clause punitive damages as to Uber without separate and distinct facts to support this relief in her

Complaint.   As such, any claim for punitive damages against Uber must be dismissed.

## VI.    **Plaintiff fails to properly seek application for use of pseudonym as to co-defendant, Javier**

Pursuant to Rule 10(a) of the Federal Rules of Civil Procedure, "[t]he title of [a] complaint

must name all parties." *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185. Courts have

nevertheless "carved out a limited number of exceptions to the general requirement of disclosure

[of the names of parties] ..." *Id.*

> The United States Court of Appeals for the Second Circuit has noted
> with approval factors to consider when determining whether to grant
> an application to proceed under a pseudonym, with the caution that
> the list is non-exhaustive and district courts should take into account
> other factors relevant to the particular case under consideration:
>
> (1) whether the litigation involves matters that are highly
> sensitive and of a personal nature;
> (2) whether identification poses a risk of retaliatory physical
> or mental harm to the party seeking to proceed
> anonymously or even more critically, to innocent non-

18

259466282v.1

parties;

(3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;

(5) whether the suit is challenging the actions of the government or that of private parties;

(6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7) whether the plaintiff's identity has thus far been kept confidential;

(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10)    whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

*Id*.

None of these factors are present in the subject matter.  Further, Connecticut law does not allow pseudonyms or apportionment against non-parties or unidentified parties. Connecticut negligence law permits a jury to apportion fault only among named or settled parties. Conn. Gen. Stat. §52-572h(o).  Connecticut does not recognize the empty-chair defense. *In re Helicopter Crash near Wendle Creek, B.C*. on August 8, 2002, 485 F. Supp. 2d 47.

Here, in this case, there has been no application put forth to proceed under a pseudonym. Plaintiff has failed to provide facts that would support the need to use of a pseudonym.

19

259466282v.1

**Conclusion**

Connecticut law is clear. Plaintiff's claims under a *respondeat superior* theory fail because Javier's criminal actions did not, as a matter of law, occur in furtherance of Uber's interests and Uber cannot be held liable for those acts regardless of how a relationship between Javier and Uber is classified. Further, plaintiff's claims for negligence against Uber fail because plaintiff does not allege that Uber knew or should have known that defendant Javier was likely to commit assault, and there is no allegation of a causal connection between Uber's alleged negligence and the assault.

Wherefore, in light of the foregoing, defendant Uber Technologies, Inc., moves that this Court grant its motion and dismiss the plaintiff's claims against it.


Dated:  September 28, 2021                    Respectfully submitted,

                                              UBER TECHNOLOGIES, INC.,
                                              By its attorneys,

                                              __/s/  Eric W.F. Niederer_____
                                              Eric W.F. Niederer, ct25773
                                              Chloe Angotta, ct30280
                                              WILSON ELSER MOSKWITZ EDELMAN &
                                              DICKER LLP
                                              1010 Washington Blvd
                                              Stamford, Connecticut 06901
                                              Telephone:  (203) 388-9100
                                              Email:  Eric.Niederer@wilsonelser.com
                                              Email:  Chloe.Angotta@wilsonelser.com

20

259466282v.1

## CERTIFICATE OF SERVICE

I, Eric W.F. Niederer, hereby certify that on the 28th day of September, 2021, I electronically filed the foregoing document with the Clerk of the Court using the EM/ECF electronic filing system, and also served it via electronic mail on the following counsel of record:

Josephine Smalls Miller, Esq.
130 Deer Hill Avenue, Unit 13
Danbury, Connecticut 06180
Jsmillerlaw@gmail.com
*Attorney for Plaintiff*

                                 **/s/ Eric W.F. Niederer**
                                 Eric W.F. Niederer, Esq.

259466282v.1