UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Carla R. Karlen,
    *Plaintiff*,

v.

Uber Technologies, Inc.,
Javier,
John Does 1–3,
    *Defendants*.

No. 3:21-cv-835 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Carla Karlen ("Plaintiff") has sued Xavier Cabrera[1] ("Defendant" or "Mr. Cabrera") for false imprisonment, assault, intentional infliction of emotional distress, and negligent infliction of emotional distress. *See* Compl. at 4–6 ¶¶ 39–44, ECF No. 1 (June 18, 2021) ("Compl."). Ms. Karlen has also sued Uber Technologies, Inc. ("Uber" or "Defendant") for vicarious liability for Mr. Cabrera's tortious conduct, negligent hiring and retention, and breach of implied contract. *Id.* at 7–8 ¶¶ 39–43. In her Complaint, Ms. Karlen alleges Mr. Cabrera, a driver for Uber, threatened her, refused to allow her to leave the vehicle, and then attempted to force her out of the car on the New Jersey Turnpike. *Id.* at 2–4 ¶¶ 7–38.

On September 28, 2021, Uber moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. *See* Uber Technologies, Inc.'s Mot. to Dismiss Pl.'s Compl., ECF No. 9 (Sept. 28, 2021); Uber Technologies, Inc.'s Mem. of Law in Supp. of its Mot. to Dismiss, ECF No. 9-1 (Sept. 28, 2021) ("Mot. to Dismiss").

---

[1] The Court notes that Plaintiff appears to have located the Uber driver, Xavier Cabrera, and served him with the Complaint. *See* Affidavit of Service, ECF No. 25 (July 25, 2022). In this Ruling and Order, the Court will refer to the Uber driver as Xavier Cabrera and will order the Clerk to update the case caption accordingly.

1

Ms. Karlen opposed the motion to dismiss. *See* Opp'n to Mot. to Dismiss, ECF No. 13 (Oct. 22, 2021) ("Opp'n"); Pl.'s Am. Opp'n to Mot. to Dismiss, ECF No. 17 (Oct. 29, 2021) ("Am. Opp'n"). On November 4, 2021, Uber submitted a reply brief in support of its motion to dismiss. *See* Uber Technologies, Inc.'s Reply to Pl.'s Opp'n to Mot. to Dismiss, ECF No. 18 (Nov. 4, 2021) ("Reply").

For the following reasons, Uber's motion to dismiss is **GRANTED.**

Plaintiff's negligent hiring and supervision claim will be dismissed without prejudice to seeking leave to amend the operative Complaint and address the deficiencies identified in this Ruling and Order by **September 30, 2022**.

Plaintiff's other claims will be dismissed with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

Ms. Karlen lives in Westport, Connecticut. *See* Compl. at 2 ¶ 7.

Uber allegedly operates a transportation company that hires drivers to provide car transportation in exchange for a fee. *Id.* at 2 ¶¶ 8–11. Uber allegedly "provide[s] safe, secure, and non-threatening" rides to its users. *Id.* at 7–8 ¶¶ 39–42. Uber allegedly did not provide any method for riders to contact Uber in the event of an emergency. *Id.* at 3 ¶ 24.

On June 19, 2019 at 2:00 p.m., a third party allegedly arranged for an Uber driver to pick Ms. Karlen up in Philadelphia, Pennsylvania and drive her to Connecticut, which required travelling through New Jersey. *Id.* at 2 ¶¶ 12–14. Mr. Cabrera alleged picked up Ms. Karlen. *Id.* at 2 ¶ 14. While driving, Mr. Cabrera allegedly spoke to Ms. Karlen in an "intrusive" and

"suggestive" manner and began driving erratically by speeding and swerving. *Id.* at 2–3 ¶¶ 17, 20.

Approximately forty minutes into the trip, Mr. Cabrera allegedly demanded that Ms. Karlen leave the car and progressively became more aggressive and insistent. *Id.* at 3 ¶¶ 22–23. While driving on the New Jersey Turnpike, Mr. Cabrera allegedly told Ms. Karlen that she made him uncomfortable and again asked her to leave his car. *Id.* at 3 ¶ 26. Allegedly concerned for her safety, Ms. Karlen asked Mr. Cabrera to drop her off at the next exit, instead of leaving her on the side of the New Jersey Turnpike. *Id.* at 3 ¶¶ 27–28. Mr. Cabrera allegedly agreed and as he arrived at the toll booth at the next exit, Ms. Karlen allegedly informed the toll booth worker that she needed police assistance. *Id.* at 3 ¶¶ 28–29.

After hearing this, Mr. Cabrera allegedly reentered the New Jersey Turnpike with Ms. Karlen still in the car. *Id.* at 3 ¶ 30. Mr. Cabrera then allegedly pulled over on the side of the New Jersey Turnpike and demanded that Ms. Karlen leave the car, but Ms. Karlen refused because she feared that leaving the car on the highway would be dangerous. *Id.* at 3–4 ¶¶ 31–34. In response, Mr. Cabrera allegedly informed Ms. Karlen that he had a gun, and then Mr. Cabrera allegedly left the car and opened the trunk to remove something that Ms. Karlen could not identify. *Id.* at 4 ¶ 35. For approximately forty minutes, Mr. Cabrera threatened Ms. Karlen and ordered her to leave the car. *Id.* at 4 ¶ 36.

Ms. Karlen's husband allegedly called 9-1-1 and told the police that Ms. Karlen was being held against her will and threatened by Mr. Cabrera. *Id.* at 4 ¶ 37. Ms. Karlen allegedly called the New Jersey State Police and an officer allegedly instructed Mr. Cabrera not to leave Ms. Karlen on the highway. *Id.* at 4 ¶¶ 37–38. Mr. Cabrera allegedly refused to provide the officer with the location of the car. *Id.* at 4 ¶ 38. Two New Jersey State Police Officers allegedly

arrived and were able to get Ms. Karlen out of the car. *Id.* at 4 ¶ 38.

### B. Procedural History

On June 18, 2021, Ms. Karlen filed this lawsuit against Mr. Cabrera and Uber in federal court on the basis of diversity jurisdiction, alleging state tort and breach of implied contract causes of action. *See* Compl. at 1, 4–8 ¶¶ 1, 39–44.

On September 28, 2021, Defendant Uber moved to dismiss the Complaint for failure to state a claim upon which relief could be granted. *See* Mot. to Dismiss at 1.

On October 22, 2021, Ms. Karlen opposed the motion to dismiss. *See* Opp'n.

On October 29, 2021, Ms. Karlen filed an amended opposition to the motion to dismiss. *See* Am. Opp'n.

On November 4, 2021, Uber submitted a reply brief in support of its motion to dismiss. *See* Reply.

On July 25, 2022, Ms. Karlen served Mr. Cabrera with the Complaint. *See* Aff. of Service, ECF No. 25 (July 25, 2022).

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### III. DISCUSSION

#### A. Vicarious Liability

Under the doctrine of respondeat superior, an employer is vicariously liable for torts committed by an employee "within the scope of his employment and in furtherance of the employer's business." *A-G Foods, Inc. v. Pepperidge Farm, Inc.*, 216 Conn. 200, 208 (1990) (citations omitted). Whether an employee's willful conduct was within the scope of employment is generally a factual issue, except when the employee's action is outside the scope of the employment as a matter of law. *Id.* at 207.

In evaluating whether an employee was acting within the scope of his employment, courts look to whether the employee's conduct: "[1] occurs primarily within the employer's authorized time and space limits; [2] is of the type that the employee is employed to perform; and [3] is motivated, at least in part, by a purpose to serve the employer." *Fiano v. Old Saybrook Fire Co. No. 1*, 332 Conn. 93, 101–02 (2019) (internal quotation marks omitted) (citing *Harp v. King*, 266 Conn. 747, 782–83 (2003)). "The vital inquiry . . . is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business." *A-G Foods*, 216 Conn. at 210 (internal quotation marks omitted).

Physical assault and threatening behavior may be considered "disobedient or unfaithful conducting of the [employer's] business" if the employee's misconduct can be inferred to fall within the scope of their job duties. *Basone v. Whole Foods Market Grp., Inc.*, No. FSTCV196043885S, 2020 WL 8264105, at *1 (Conn. Super. Ct. Dec. 14, 2020) (quoting *Fiano*, 332 Conn. at 101–02) (denying motion to strike vicarious liability claim because plaintiff alleged that the employee-defendant was responsible for "patrolling" the grounds when he allegedly

assaulted the plaintiff in the employer's parking lot); *see also Pelletier v. Bilbiles*, 154 Conn. 544, 548 (1967) (upholding denial of summary judgment on vicarious liability claim where the employee allegedly assaulted an "unruly customer" because the employer instructed the employee to ensure that customers "did not misbehave inside the store" and the assault could be considered "an extremely forceful, although misguided, method of discouraging patrons of the [store] . . . from causing disturbances").

Physical assault and threatening behavior, however, are considered an abandonment of the employer's business if the employee's alleged misconduct is wholly unrelated to or directly conflicts with the employee's job duties. *See Brown v. Housing Authority*, 23 Conn. App. 624, 626, 628 (1990); *see also Quichimbo v. Luow*, No. CV176069576S, 2018 WL 6629231, at *3–6 (Conn. Super. Ct. Nov. 26, 2018) (finding the employer was not vicariously liable for the employee's assault of a third party because the employer's mission was to "provid[e] service that is safe, convenient, reliable, environmentally responsible and courteous," and "assault is expressly prohibited by [the employer]").

Courts in other jurisdictions have recently determined that Uber is not vicariously liable for the alleged physical assault and threatening behavior of an Uber driver. *See., e.g.*, *Hoffman v. Silverio-Delrosar*, No. 20-cv-13291, 2021 WL 2434064, at *3 (D.N.J. June 15, 2021) (dismissing vicarious liability claim because"[p]unching a customer is not a foreseeable act, does not further [the driver's] role as an employee who transports passengers, and is not the type of force usually used by a person who transports passengers in a car"); *Fusco v. Uber Technologies, Inc.*, No. 17-36, 2018 WL 3618232, at *10 (E.D. Pa. July 27, 2018) (dismissing a vicarious liability claim against Uber where the complaint alleged the driver attacked the plaintiff because he did not want to drive to the plaintiff's requested destination, which "runs directly counter to

[Uber's] business purposes" of transporting its customers); *Phillips v. Uber Technologies, Inc.*, No. 16-295, 2017 WL 2782036, at *7 (S.D.N.Y. June 14, 2017) (dismissing a vicarious liability claim regarding alleged battery, assault, and false imprisonment because "Uber could not have anticipated that one of its drivers would have driven so dangerously, kept a passenger in the car against her will, attempted to run passengers over, and assaulted a passenger with an umbrella, making him bleed")

Ms. Karlen nevertheless argues that Mr. Cabrera's alleged misconduct occurred while he was driving for Uber and therefore the misconduct was within the scope of his employment, and in any event, the question of whether Uber should be held vicariously liable for Mr. Cabrera's tortious conduct under a theory of respondeat superior is a fact-specific inquiry, which is better addressed at a later stage of the case. *See* Am. Opp'n at 7–10.

Defendant argues that, as a matter of law, Uber cannot be held vicariously liable for Mr. Cabrera's conduct because false imprisonment, assault, and negligent and intentional infliction of emotional distress are outside the scope of Uber's business of providing safe and non-threatening transportation services. *See* Mot. to Dismiss at 7–13.

The Court agrees.

Mr. Cabrera's alleged tortious conduct, threatening Ms. Karlen, keeping Ms. Karlen in the vehicle against her will, and attempting to force Ms. Karlen out of the vehicle on the highway before completing the trip, "runs directly counter to [Uber's] business purpose" of providing customers with safe, secure, and non-threatening rides. Compl. at 2–4 ¶¶ 17–23, 7–8 ¶¶ 39–40; *Fusco*, 2018 WL 3618232, at *10. That the misconduct occurred while Mr. Cabrera was driving for Uber is insufficient to support a vicarious liability claim. *See A-G Foods*, 216 Conn. at 209 ("[T]hat [the employee's tortious conduct] occurred during business hours . . . is not sufficient to

support the conclusion that [the employee] was acting within the scope of [his] employment."). Therefore, as a matter of law, Mr. Cabrera's allegedly tortious actions cannot be within the scope of his employment and provide a basis for vicarious liability.

Accordingly, Ms. Karlen's vicarious liability claims against Uber will be dismissed.

### B. The Negligent Hiring and Retention Claims[2]

An employer may be held directly liable for negligent hiring if the "employer's own negligence in failing to select an employee fit or competent to perform the services of employment" caused an injury. *Brooks v. Sweeney*, 299 Conn. 196, 207 n.12 (2010) (internal quotation marks omitted) (citing *Shore v. Stonington*, 187 Conn. 147, 155 (1982)). Similarly, an employer may be held liable for the negligent supervision of an employee where the plaintiff "suffered an injury due to the [employer]'s failure to supervise an employee whom the [employer] had [a] duty to supervise." *Brooks*, 299 Conn. at 207 n.12 (internal citations and quotation marks omitted).

An employer does not have a duty to protect a plaintiff from an employee's tortious acts, whether due to allegedly negligent hiring or supervision, "unless the [employer] knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct." *Michalsky v. Moffly Pubs., Inc.*, No. FSTCV196042420S, 2020 WL 5537003, at *5 (Conn. Super. Ct. Aug. 13, 2020).

Ms. Karlen argues that Uber was negligent in hiring and supervising Mr. Cabrera because Uber does not use fingerprint-based vetting for drivers and Uber does not conduct background

---

[2] The Court considers the negligent hiring and negligent retention claims together because the elements of each "are nearly the same[,] . . . the only difference being at what point the defendants became aware of the actor's propensity for tortious conduct." *Petruzello v. Negron*, No. NNH-CV-21-6113803-S, 2022 WL 1049200, at *6 (Conn. Super. Ct. Mar. 4, 2022) (internal citations omitted) (quoting *Hearn v. Yale-New Haven Hospital*, CV020466339S, 2007 WL 2938624 at *4 (Conn. Super. Ct. Apr. 2, 2007)).

checks that would identify potential mental health issues. *See* Am. Opp'n at 4–6.[3]

Defendant argues that Uber was not negligent in hiring and supervising Mr. Cabrera because there are no facts in the Complaint that show Uber knew or should have known that Mr. Cabrera had the propensity to commit the misconduct at issue. *See* Mot. to Dismiss at 16–20.

The Court agrees.

Plaintiff alleges only that Uber "hired [Mr. Cabrera], who was, or became unfit to perform his duties" as an Uber driver. Compl. at 7 ¶ 39. Plaintiff does not, however, include any facts in her Complaint alleging that Mr. Cabrera had a propensity to commit the tortious conduct at issue. *See Petruzello*, 2022 WL 1049200, at *6 ("It is fatal to a . . . negligent supervision [claim] if the complaint contains no allegations concerning the propensity of the employee to engage in the type of conduct which caused injury."). Therefore, the Court cannot find that Plaintiff's claims "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Absent allegations that the conduct was foreseeable to Uber, Plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible[.]" *Id.* at 570.

Accordingly, Plaintiff's claims for negligent hiring and retention will be dismissed for failure to state a claim.[4]

### C. The Implied Breach of Contract Claim

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Pelletier v. Galske*, 105 Conn. App. 77, 81, 936 A.2d 689 (2007) (internal quotation marks omitted) (quoting *Rosato v. Mascardo*, 82 Conn. App. 396, 410–11 (2004)). An implied contract is the same as an

---

[3] The Court notes that, as it relates to the negligent hiring and supervision claims, Ms. Karlen does not appear to rely on any facts included in her Complaint. *See* Am. Opp'n at 4–6.
[4] The Court declines to address Ms. Karlen's argument that Uber is a common carrier, which is relevant only to determining whether Uber should be subject to a heightened standard of care.

express contract, except that an implied contract "is not expressed in words, but is implied from the conduct of the parties." *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573–74 (2006) (citing *Janusauskas v. Fichman*, 264 Conn. 796, 804 (2003)).

An implied contract is formed when one party, "without being requested to do so, renders services under circumstances indicating that he expects" performance of the other party in return and the other party, "knowing such circumstances, avails himself of the benefit of those services." *Metzner v. Quinnipiac Univ.*, 528 F. Supp. 3d 15, 31–32 (D. Conn. Mar. 25, 2021) (internal quotation marks omitted) (quoting *Janusauskas*, 264 Conn. at 804). "[T]he existence of an implied in fact contract is a question of fact." *Conn. Light & Power Co. v. Proctor*, 324 Conn. 245, 258 (2016).

"The intent of both parties to a contract determines whether a third party has contract rights as a third party beneficiary" *Grigerik v. Sharpe*, 247 Conn. 293, 310 (1998). "[T]he intent to confer a benefit is irrelevant to the determination of whether the plaintiff was a third party beneficiary, rather the appropriate inquiry is whether the parties intended to create a direct obligation from one party to a third party." *Id.* at 313 (internal quotation marks omitted) (quoting *Gateway Co. v. DiNoia*, 232 Conn. 223, 231 (1995)). These rules are "equally relevant when an implied contract is alleged." *Amity Reg. Sch. Dist. No. 5 v. Atlas Const. Co.*, No. X06CV 970153388S, 2000 WL 1198163, at *3 (D. Conn. Aug. 4, 2000).

Plaintiff argues Uber created an implied contract to provide safe transportation to the third party who arranged the trip and Ms. Karlen was a third-party beneficiary to that implied contract. *See* Am. Opp'n at 10–11. Plaintiff further argues that Uber breached its contract when Mr. Cabrera threatened Ms. Karlen and attempted to force her out of the car on the New Jersey Turnpike. *Id.*

Defendant argues there is no implied agreement and therefore there can be no breach of contract because the Uber ride was arranged by a third-party and Plaintiff failed to plead sufficient facts showing that additional safety measures would have prevented Mr. Cabrera's intentional and unforeseeable conduct. *See* Mot. to Dismiss at 17–18.

The Court agrees.

Uber allegedly "engages drivers" and "charges riders fees . . . through its app." Compl. at 2 ¶¶ 10–12. A third party allegedly requested that Uber provide a driver to complete a trip from Philadelphia, PA to Connecticut and Uber allegedly sent Mr. Cabrera. *Id.* at 2 ¶¶ 13–14. The Complaint, however, does not include any allegations that Uber intended Ms. Karlen to be a third party beneficiary to the alleged implied contract between Uber and the individual who requested the ride through the app. Rather, Ms. Karlen simply relies on the allegations that Mr. Cabrera intended to drive Ms. Karlen to her destination. *See* Am. Opp'n at 12. Therefore, the Court cannot find that Ms. Karlen's implied breach of contract claim "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Absent allegations that Uber intended Ms. Karlen to be a third-party beneficiary, she "ha[s] not nudged [her] claims across the line from conceivable to plausible[.]" *Id.* at 570.

Accordingly, the implied breach of contract claim will be dismissed.

### D. Leave to Amend

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive

>pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"). "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [the plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

Here, consistent with the analysis above, the Court finds that, even if given the opportunity to amend the complaint further, Ms. Karlen will not be able to allege facts showing that she has a viable vicarious liability or breach of implied contract claim. *See Hybrid Athletics, LLC v. Hylete, LLC*, No. 3:17-CV-1767 (VAB), 2018 WL 4323816, at *4 (D. Conn. Sept. 10,

13

2018) (stating that a court will "deny a motion to amend if it is clear on the face of the pleadings that the claims would be barred by the statute of limitations, and if the issue would not need to be more fully briefed"); *see also Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) ("One good reason to deny leave to amend is when such leave would be futile.").

As explained above, there is no basis upon which the Court can conclude that Mr. Cabrera's alleged misconduct is related to his employment duties because the misconduct directly conflicts with those duties as plead in the Complaint. Additionally, there is no basis for the Court to conclude an implied contract exists between Uber and Ms. Karlen because Ms. Karlen cannot plausibly allege that Uber intended Ms. Karlen, who was unknown to Uber at the time the trip occurred, to be a third-party beneficiary.

As to the negligent hiring and supervision claim, to the extent that Ms. Karlen can plead a viable negligent hiring and supervision claim, despite the deficiencies noted here, this denial is without prejudice to seeking leave to file another amended pleading.

IV.  **CONCLUSION**

For the foregoing reasons, Uber's motion to dismiss is **GRANTED**.

Plaintiff's negligent hiring and supervision claim will be dismissed, without prejudice to seeking leave to amend the operative Complaint and address the deficiencies identified in this Ruling and Order by **November 18, 2022**.

To the extent the parties have any discovery issues, the parties shall file a motion for a discovery conference by **September 30, 2022**.

Plaintiff's other claims will be dismissed with prejudice.

The Clerk of Court is respectfully directed to correct Defendant Xavier Cabrera's name on the docket.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of August, 2022.

      /s/ Victor A. Bolden
      VICTOR A. BOLDEN
      UNITED STATES DISTRICT JUDGE