UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARLA R. KARLEN,<br>    *Plaintiff*,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>JAVIER CABRERA, and<br>JOHN DOES 1–3,<br>    *Defendants*. | No. 3:21-cv-835 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Carla Karlen ("Plaintiff") has sued Uber Technologies, Inc. ("Uber") for negligent hiring and retention ("Count Five") and breach of contract ("Count Six"). Am. Compl. at 13–14 ¶¶ 66–71, ECF No. 39 ("Am. Compl."). In the Amended Complaint, Ms. Karlen alleges that Javier Cabrera, a co-Defendant and driver for Uber, threatened her, refused to allow her to leave the vehicle, and then attempted to force her out of the car on the New Jersey Turnpike. *Id.* at 2–9 ¶¶ 7–65.

On December 8, 2022, Uber filed a motion to dismiss Counts Five and Six of Ms. Karlen's Amended Complaint. Uber Tech., Inc.'s Mot. to Dismiss Counts Five and Six of Pl.'s Am. Compl., ECF No. 40-1 ("Mot. to Dismiss Am. Compl.").

For the following reasons, Uber's motion to dismiss is **GRANTED.**

Count Five and Count Six are dismissed with prejudice.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

    **A.   Factual Allegations**

Uber allegedly operates a transportation company that hires drivers to provide car transportation in exchange for a fee. Compl. at 2 ¶¶ 8–11. Uber allegedly "provide[s] safe,

1

secure, and non-threatening" rides to its users. *Id.* at 7–8 ¶¶ 39–42. Uber allegedly did not provide any method for riders to contact Uber in the event of an emergency. *Id.* at 3 ¶ 24.

On June 19, 2019, a third party allegedly arranged for an Uber driver to pick Ms. Karlen up in Philadelphia, Pennsylvania and drive her to Connecticut, which required travelling through New Jersey. *Id.* at 2 ¶¶ 12–14. Mr. Cabrera, driving for Uber, allegedly picked up Ms. Karlen. *Id.* at 2 ¶ 14. While driving, Mr. Cabrera allegedly spoke to Ms. Karlen in an "intrusive" and "suggestive" manner and began driving erratically by speeding and swerving. *Id.* at 3 ¶¶ 16–17, 20.

Approximately forty minutes into the trip, Mr. Cabrera allegedly demanded that Ms. Karlen leave the car and progressively became more aggressive and insistent. *Id.* at 3 ¶¶ 22–23. While driving on the New Jersey Turnpike, Mr. Cabrera allegedly told Ms. Karlen that she made him uncomfortable and again asked her to leave his car. *Id.* at 4 ¶ 26. Allegedly concerned for her safety, Ms. Karlen asked Mr. Cabrera to drop her off at the next exit, instead of leaving her on the side of the New Jersey Turnpike. *Id.* at 4 ¶¶ 27–28. Mr. Cabrera allegedly agreed and as he arrived at the toll booth at the next exit, Ms. Karlen allegedly informed the toll booth worker that she needed police assistance. *Id.* at 4 ¶¶ 28–29.

After hearing this, Mr. Cabrera allegedly reentered the New Jersey Turnpike with Ms. Karlen still in the car. *Id.* at 4 ¶ 30. Mr. Cabrera then allegedly pulled over on the side of the New Jersey Turnpike and demanded that Ms. Karlen leave the car, but Ms. Karlen refused because she feared that leaving the car on the highway would be dangerous. *Id.* at 4 ¶¶ 31–34. Mr. Cabrera allegedly informed Ms. Karlen that he had a gun, and then Mr. Cabrera allegedly left the car and opened the trunk to remove something that Ms. Karlen could not identify. *Id.* at 5 ¶ 35. For approximately forty minutes, Mr. Cabrera allegedly threatened Ms. Karlen and ordered

her to leave the car. *Id.* at 5 ¶ 36.

Ms. Karlen's husband allegedly called 911 and told the police that Ms. Karlen was being held against her will and threatened by Mr. Cabrera. *Id.* at 5 ¶ 37. Ms. Karlen allegedly also called the New Jersey State Police and an officer allegedly instructed Mr. Cabrera not to leave Ms. Karlen on the highway. *Id.* at 5 ¶¶ 37–38. Mr. Cabrera allegedly refused to provide the officer with the location of the car. *Id.* at 5 ¶ 38. Eventually, two New Jersey State Police Officers allegedly arrived at the scene and were able to get Ms. Karlen out of the car. *Id.*

**B. Procedural History**

On June 18, 2021, Ms. Karlen filed this lawsuit against Mr. Cabrera and Uber in federal court on the basis of diversity jurisdiction, alleging state tort and breach of implied contract causes of action. *See* Compl., ECF No. 1.

On September 28, 2021, Defendant Uber moved to dismiss the Complaint for failure to state a claim upon which relief could be granted. *See* Mot. to Dismiss, ECF No. 9.

On October 22, 2021, Ms. Karlen opposed the motion to dismiss. *See* Opp'n to Mot. to Dismiss, ECF No. 13.

On October 29, 2021, Ms. Karlen filed an amended opposition to the motion to dismiss. *See* Am. Opp'n to Mot. to Dismiss, ECF No. 17.

On November 4, 2021, Uber submitted a reply brief in support of its motion to dismiss. *See* Reply in Supp. of Mot. to Dismiss, ECF No. 18.

On July 25, 2022, Ms. Karlen served Mr. Cabrera with the Complaint. *See* Aff. of Service, ECF No. 25.

On August 24, 2022, the Court held a hearing on the pending motion to dismiss, during which the parties were given an opportunity to argue their respective positions. Min. Entry, ECF

No. 26.

On August 26, 2022, the Court issued a Ruling and Order granting Uber's motion to dismiss. Ruling and Order on Motion to Dismiss, ECF No. 28. On August 27, 2022, the Court Amended this Ruling and Order. Am. Ruling and Order on Motion to Dismiss, ECF No. 29 ("MTD Ruling").

On September 30, 2022, Ms. Karlen filed a motion for a discovery conference, Mot. for Disc. Conf., ECF No. 29, which the Court granted and ordered the parties to submit written briefs, Order, ECF No. 30.

On October 7, 2022, Uber filed an objection to Ms. Karlen's motion for discovery conference. Obj. to Mot. for Disc. Conf., ECF No. 31.

On October 7, 2022, Ms. Karlen filed a motion to compel Uber's discovery responses. Mot. to Compel Disc. Resp., ECF No. 32.

On October 12, 2022, Uber filed an objection to Ms. Karlen's motion to compel. Obj. to First Mot. to Compel Disc. Resp., ECF No. 33.

On October 12, Ms. Karlen submitted a reply in support of her motion to compel. Reply to Resp. to Mot. to Compel, ECF No. 33.

On October 18, 2022, the Court held a discovery conference. Min. Entry, ECF No. 35.

On October 18, 2022, the Court denied the motion to compel. Order, ECF No. 36.

On November 15, 2022, Ms. Karlen filed a motion for extension of time to file an Amended Complaint, Mot. for Extension of Time, ECF No. 37, which the Court granted on November 16, 2022, Order, ECF No. 38.

On November 28, 2022, Ms. Karlen filed an Amended Complaint. Am. Compl.

On December 8, 2022, Uber filed a motion to dismiss Counts Five and Six of the

Amended Complaint. Mot. to Dismiss Am. Compl.

On February 22, 2023, Ms. Karlen filed a memorandum of law in opposition to Uber's motion to dismiss. Mem. in Opp'n to Mot. to Dismiss, ECF No. 44 ("Opp'n").

On March 2, 2023, Uber submitted a reply in support of its motion to dismiss Counts Five and Six. Reply to Resp. to Mot. to Dismiss, ECF No. 45 ("Reply").

## II.    STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views

5

the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

**III.    DISCUSSION**

**A.  The Negligent Hiring and Retention Claims**

An employer may be held directly liable for negligent hiring if the "employer's own negligence in failing to select an employee fit or competent to perform the services of employment" caused an injury. *Brooks v. Sweeney*, 299 Conn. 196, 207 n.12 (2010) (internal quotation marks omitted) (citing *Shore v. Stonington*, 187 Conn. 147, 155 (1982)). Similarly, an employer may be held liable for the negligent supervision of an employee where the plaintiff "suffered an injury due to the [employer]'s failure to supervise an employee whom the [employer] had [a] duty to supervise." *Brooks*, 299 Conn. at 207 n.12 (internal citations and quotation marks omitted).

An employer, however, does not have a duty to protect a plaintiff from an employee's tortious acts, whether due to allegedly negligent hiring or supervision, "unless the [employer] knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct." *Michalsky v. Moffly Pubs., Inc.*, No. FSTCV196042420S, 2020 WL 5537003, at *5 (Conn. Super. Ct. Aug. 13, 2020).[1]

Uber argues that Ms. Karlen's Amended Complaint fails to address the deficiencies that led the Court to dismiss the original Complaint. Mot. to Dismiss Am. Compl. at 1. More specifically, Uber states that the Court previously held that Ms. Karlen's negligent hiring and supervision claims were dismissed but could be re-plead "so long as she was able to plead facts alleging the codefendant . . . , [Mr.] Cabrera . . . 'had a propensity to commit the tortious conduct at issue.'" *Id.* (quoting MTD Ruling at 10). In Uber's view, Ms. Karlen's Amended Complaint includes only "generalized allegations with respect to Uber's alleged vetting practices for independent driver's accessing its rideshare app" and "allegations that deal with cases/matters that are wholly unrelated to the instant lawsuit." *Id.* at 5.

Ms. Karlen argues she has plead sufficient facts to support the negligent hiring and retention claim. Opp'n at 6. More specifically, Ms. Karlen emphasizes the facts in the Amended Complaint concerning Uber's insufficient efforts to "provide any training to their driver[s]" because, instead of training, Uber "simply referred [drivers] to their website that did not contain any proper training material or instruction for the safe transporting of passengers." *Id.* at 6–7. Ms. Karlen argues that, although "very little is known at this point specifically about the

---

[1] The Court considers the negligent hiring and negligent retention claims together because the elements of each "are nearly the same[,] . . . the only difference being at what point the defendants became aware of the actor's propensity for tortious conduct." *Petruzello v. Negron*, No. NNH-CV-21-6113803-S, 2022 WL 1049200, at *6 (Conn. Super. Ct. Mar. 4, 2022) (internal citations omitted) (quoting *Hearn v. Yale-New Haven Hospital*, CV020466339S, 2007 WL 2938624 at *4 (Conn. Super. Ct. Apr. 2, 2007)).

7

background check on [Mr.] Cabrera," Uber "has been placed on notice time and again regarding deficiencies in its background and driver safety checks through various other lawsuits." *Id.* at 9. Ms. Karlen points to several examples of other lawsuits included in the Amended Complaint. *Id.* In Ms. Karlen's view, the Court "must . . . infer that a more thorough background check of [Mr.] Cabrera might have revealed information that would have led to discovery of his propensity to engage in the kind of behaviors that resulted in Plaintiff's injury." *Id.*

Ms. Karlen also argues there are sufficient allegations to establish that Uber "fail[ed] to supervise its drivers generally, but including [Mr.] Cabrera." *Id.* at 10. More specifically, Ms. Karlen emphasizes allegations that "Uber failed to implement any system to adequately track Uber drivers during the transportation of customers." *Id.*

In response, Uber argues that Ms. Karlen's "generalized allegations of inadequate and insufficient training and background check practices on the part of Uber" are not "sufficient to assert a viable negligent hiring and supervision claim." *Id.* at 2. Uber emphasizes this Court's Ruling on the prior motion to dismiss and cites *Petruzello v. Negron*, No. NNHCV216113803S, 2022 WL 1049200, at *6 (Conn. Super. Ct. Mr. 4, 2022) for the proposition that "[i]t is fatal to a . . . negligent supervision [claim] if the complaint contains no allegations concerning the propensity of the employee to engage in the type of conduct which caused the injury." *Id.* In Uber's view, the Amended Complaint does not include any such allegations and therefore the negligent hiring and supervision claim must be dismissed.

The Court agrees.

To find a plausible negligent hiring and supervision claim, there must be some factual basis to support the inference that Mr. Cabrera had the propensity to engage in the type of conduct that is the basis of the Amended Complaint. *Compare Basone v. Wholefoods Mkt. Grp.,*

8

*Inc.*, No. FST-CV-19-6043885-S, 2020WL 8264105, at *8–9 (Conn. Super. Ct. December 14, 2020) (denying motion to strike negligent hiring claim where Amended Complaint alleged the defendant grocery store knew or should have known about employee's alleged propensity to commit violence based on his prior criminal convictions for resisting arrest and disorderly conduct and defendant would have discovered his criminal convictions had it done a background check), *with Hearn*, 2007 WL 2938624, at *2–5 (granting motion to strike negligent hiring claim because Complaint failed to allege any facts beyond an allegation that the hospital should have known of the employee's potential for tortious conduct).

The Amended Complaint includes additional factual allegations concerning Uber's background check process, training requirements, and safety procedures. *See* Am. Compl. ¶¶ 39–65. Ms. Karlen does not, however, include any facts in her Amended Complaint alleging that Mr. Cabrera had a propensity to commit the tortious conduct at issue. Instead, Ms. Karlen contends that Uber's general background check and safety practices are sufficient for the Court to "infer that a more thorough background check of [Mr.] Cabrera might have revealed information that would have led to discovery of his propensity to engage in the kind of behaviors that resulted in Plaintiff's injury." Opp'n at 9.

This, however, is insufficient to show Mr. Cabrera had a propensity to act in the way he did, *see Petruzello*, 2022 WL 1049200, at *6 ("It is fatal to a . . . negligent supervision [claim] if the complaint contains no allegations concerning the propensity of the employee to engage in the type of conduct which caused injury."), and any inference Ms. Karlen suggests based on the allegations included in the Complaint does not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Even with the allegations that Uber's background check and safety protocol are lacking, Ms. Karlen's negligent hiring and supervision claim fails because

9

there are no factual allegations concerning what Uber would have discovered if its procedures were improved. *See Hearn*, 2007 WL 2938624, at *2–5 (granting motion to strike negligent hiring claim because Complaint failed to allege any facts beyond an allegation that the hospital should have known of the employee's potential for tortious conduct).

Accordingly, Uber's motion to dismiss Count Five will be granted.

### B. The Breach of Implied Contract Claim

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Pelletier v. Galske*, 105 Conn. App. 77, 81, 936 A.2d 689 (2007) (internal quotation marks omitted) (quoting *Rosato v. Mascardo*, 82 Conn. App. 396, 410–11 (2004)). An implied contract is the same as an express contract, except that an implied contract "is not expressed in words, but is implied from the conduct of the parties." *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573–74 (2006) (citing *Janusauskas v. Fichman*, 264 Conn. 796, 804 (2003)).

An implied contract is formed when one party, "without being requested to do so, renders services under circumstances indicating that he expects" performance of the other party in return and the other party, "knowing such circumstances, avails himself of the benefit of those services." *Metzner v. Quinnipiac Univ.*, 528 F. Supp. 3d 15, 31–32 (D. Conn. Mar. 25, 2021) (internal quotation marks omitted) (quoting *Janusauskas*, 264 Conn. at 804). "[T]he existence of an implied in fact contract is a question of fact." *Conn. Light & Power Co. v. Proctor*, 324 Conn. 245, 258 (2016).

Uber argues that Ms. Karlen "fails to assert any allegations that Uber intended Ms. Karlen to be a third-party beneficiary of the alleged implied contract between Uber and the person who requested the subject ride through the Uber app." Mot. to Dismiss Am. Compl. at 6.

More specifically, Uber emphasizes that Ms. Karlen "does not assert that she was a contracting party, had rights under a contract, or even contacted Uber to arrange a ride." *Id.* at 11. In Uber's view, Ms. Karlen is "attempting to circumvent this Court's ruling by recasting her [vicarious liability] claim as a quasi-contractual claim." *Id.* Finally, Uber argues that the Court dismissed Ms. Karlen's breach of implied contract claim with prejudice and did not grant Ms. Karlen leave to amend. *Id.*

Ms. Karlen argues that, while the court dismissed the breach of implied contract claim in the original Complaint based "solely" on the third-party beneficiary theory, she has plead a new implied contract claim based on allegations that Uber is a common carrier. Opp'n at 11. More specifically, Ms. Karlen contends that, as an alleged common carrier, Uber had "a duty to carry all passengers safely" and "owed a heightened duty to use the highest care, vigilance, and foresight reasonably to avoid harm to passengers." *Id.* In Ms. Karlen's view, it is irrelevant that she did not contract with Uber herself because "[a]ll passengers are similarly situated when dealing with a common carrier." *Id.* at 12.

In response, Uber again emphasizes that the Court's prior Ruling dismissed the breach of implied contract claim with prejudice and the new theory of liability does not change the Court's Ruling. Reply at 3. Uber argues that, to the extent the breach of implied contract claim is considered new, it is untimely and therefore, barred. *Id.* Uber contends that allowing Ms. Karlen to "assert an entirely new claim now would be greatly prejudicial to the Defendant" because there would be essentially "no time to conduct discovery and otherwise address this new claim." *Id.* at 4. Finally, in Uber's view, the Court already addressed Ms. Karlen's common carrier argument in its Ruling on the motion to dismiss the original Complaint when the Court stated that common carrier status was only relevant to determining whether Uber should be subject to a

heightened standard of care. *Id.*

The Court agrees, in part.

As an initial matter, in the Court's Ruling on the motion to dismiss the original Complaint, the Court expressly denied Ms. Karlen leave to amend the breach of implied contract claim. *See* MTD Ruling at 14. Even for entirely new claims, as Ms. Karlen argues this is, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Ms. Karlen did not get Uber's consent or seek the Court's leave before filing an Amended Complaint that included this new claim. Therefore, it is well within the Court's discretion to simply strike Count Six of the Amended Complaint. *See, e.g., Williams v. Norris*, No. 1:18-cv-0349, 2019 WL 2295375, at *2 (N.D.N.Y. May 30, 2019) (issuing order that if the plaintiff "file[d] an amended complaint without leave, the filing w[ould] be deemed stricken from the docket"); *see also Chechele v. Scheetz*, 466 F. App'x 39, 41 (2d Cir. 2012) (stating that "[i]t is well within the court's discretion to deny leave to amend . . . when [as here] leave is requested informally in a brief filed in opposition to a motion to dismiss" (alterations in original) (citations and quotation marks omitted)).

Nonetheless, even considering the new allegations in Ms. Karlen's Amended Complaint, Count Six will be dismissed because Uber's alleged common carrier status does not change the traditional breach of implied contract analysis. *See Ebomwonyi v. Sea Shipping Line*, 473 F. Supp. 3d 338, 347–48 (S.D.N.Y. 2020) (analyzing a breach of contract claim against common-carrier defendant, SSL, using the traditional elements for breach of contract); *Abdel-Karim v. Egyptair Holding Co.*, 649 F. App'x 5, 6 (2d Cir. 2016) (same). As the Court stated in its Ruling an on Uber's motion to dismiss the original Complaint, Uber's alleged status as a common carrier is relevant only to claims that include a standard of care, such as the vicarious liability

claim that was previously dismissed. *See* MTD Ruling at 10 n.4.

Therefore, because the Amended Complaint does not include any additional allegations related to Ms. Karlen's third-party beneficiary status, for the reasons already stated in the Court's Ruling on Uber's motion to dismiss the original Complaint, there is no "factual amplification . . . to render" the breach of implied contract claim "plausible." *Arista Records LLC*, 604 F.3d at 120 (quoting *Turkmen*, 589 F.3d at 546).

Accordingly, Uber's motion to dismiss Count Six will be granted.

### C. Leave to Amend

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile"

13

and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"). "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [the plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

Here, consistent with the analysis above and in light of Ms. Karlen's failure to state a claim even after limited discovery, the Court finds that Ms. Karlen will not be able to allege facts showing that she has a viable negligent hiring and supervision or breach of implied contract claim. *See Hybrid Athletics, LLC v. Hylete, LLC*, No. 3:17-CV-1767 (VAB), 2018 WL 4323816, at *4 (D. Conn. Sept. 10, 2018) (stating that a court will "deny a motion to amend if it is clear on the face of the pleadings that the claims would be barred by the statute of limitations, and if the issue would not need to be more fully briefed"); *see also Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) ("One good reason to deny leave to amend is when such leave would be futile.").

Accordingly, Ms. Karlen will not be granted leave to amend the Complaint a second time and Counts Five and Six will be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Uber's motion to dismiss is **GRANTED.**

Count Five and Count Six are dismissed with prejudice.

**SO ORDERED** at Bridgeport, Connecticut, this 19th day of May, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE